UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MICHAEL C. PETTY,<br><br>　　　　　　Plaintiff,<br>　vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br>　of the Social Security Administration,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)　　1:07-cv-0369-SEB-JMS<br>)<br>)<br>)<br>)<br>)<br>) |

## ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW

Michael C. Petty ("Petty") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

## I. BACKGROUND

Petty filed applications for DIB and SSI on July 21, 2003, alleging an onset date of disability of January 15, 2002. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on November 7, 2005. Petty was present, accompanied by his attorney.  Medical and other records were introduced into evidence, and Petty and a vocational expert testified at the hearing. The ALJ issued a decision on August 24, 2006, denying benefits. On March 8, 2007, the Appeals Council denied Petty's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Petty met the nondisability requirements of the Act and was insured for benefits through the date of the ALJ's decision; (2) Petty had not engaged in substantial gainful activity since the alleged onset of disability; (3) Petty's history of complex partial seizure disorder, borderline intellectual functioning, learning disability, dyslexia, obsessive compulsive disorder, generalized anxiety disorder, dependent personality disorder, and chronic cognitive difficulty were considered "severe" impairments based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c); (4) these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) Petty's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the decision; (6) Petty had the following residual functional capacity ("RFC"): work with no exertional, no visual limitations, no communicative limitations, no work at unprotected heights, around dangerous moving machinery, operating a motor vehicle or around open flames or large bodies of water, only simple and repetitive tasks with no more than superficial interaction with the general public, co-workers, or supervisors, and no requirement for reading or mathematics; (7) Petty's past relevant work as janitorial/floor cleaning/stocker did not require the performance of work-related activities precluded by his RFC; (8) Petty's severe impairments did not prevent him from performing his past relevant work, and in the alternative, there were a significant number of jobs in the state economy that Petty could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Petty had not been under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4)

the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ determined that Petty had "severe" impairments consisting of a history of complex partial seizure disorder, borderline intellectual functioning, learning disability, dyslexia, obsessive compulsive disorder, generalized anxiety disorder, dependent personality disorder, and chronic cognitive difficulty, but that he could perform his past relevant work as janitorial/floor cleaning/stocker, and therefore, was not disabled. In the alternative, the ALJ determined that Petty could perform a significant number of jobs in the state economy. Petty argues that the ALJ's decision is not supported by substantial evidence. Specifically, Petty contends that the ALJ failed to discuss and weigh the opinions of two experts and the ALJ failed to make the mental RFC assessment required by applicable rules and regulations. The court agrees with Petty as to the ALJ's failure to evaluate some of the important evidence of record, which will require the ALJ to reconsider Petty's mental RFC.

Petty asserts that the ALJ failed to address and weigh the opinions of treating physician Dr. Alessi and treating psychiatrist Dr. Schneider. The Commissioner acknowledges that the ALJ did not articulate the weight she accorded these physicians' opinions. Dr. Alessi treated Petty for his anxiety disorder, seizure disorder, headaches, and other conditions. (R. at 428-456, 721-30). Dr. Alessi opined in February 2004 that he had treated Petty since 1996 and had obtained a "neuro consult" and "neuropsych testing." (Exhibit E, R. at 648). Dr. Alessi listed Petty's diagnoses as a seizure disorder, traumatic brain injury, and post traumatic cognitive deficit, all of which had affected him since 1985, and the prognosis for the latter two conditions was "poor." (R. at 651). Dr. Alessi opined that Petty was permanently unable to work based on a 19-year history of cognitive deficits. (R. at 652). He also opined that Petty's conditions would not improve with treatment because of the nature of the disease. *Id.* Dr. Alessi determined that Petty did not have any physical exertional limitations. (R. at 653). The ALJ did not review Dr. Alessi's treatment notes nor did she evaluate the February 2004 opinions.

3

Psychiatrist Dr. Schneider treated Petty from September 2002 through at least June 2003. (R. at 332-342, 398-400). Dr. Schneider stated that Petty had multiple psychiatric symptoms and had learning disabilities which predated his traumatic brain injury. (R. at 340-341, 398-400). In August 2003, Dr. Schneider described Petty as exhibiting "ongoing paranoia, occasional anger outbursts, cognitive problems, all since TBI 1985." (R. at 315). She reported that the prognosis for Petty was "poor." (R. at 318). Dr. Schneider diagnosed mood disorder secondary to traumatic brain injury, schizotypal personality disorder and learning disorder. (R. at 313).

The ALJ's failure to discuss and weigh the notes and opinions of these long term medical providers cannot be excused by the Commissioner's *post hoc* rationalizations. This is true especially in this case where no medical expert was called to review the record, weigh the conflicting medical evidence, and testify as to Petty's mental RFC. The court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning because a significant portion of that reasoning is absent. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted).

Petty also contends that the ALJ failed to make a mental RFC assessment and determine his worked-related abilities on a function-by-function basis in accordance with Social Security Ruling ("SSR") 96-8p. SSR 96-8p requires that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945." *See* 20 C.F.R. §§ 404.1545(c), 416.945(c) ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work."). SSR 96-8p also states that "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

On remand, the ALJ will have to reconsider the entire record, including the notes and opinions of Dr. Alessi and Dr. Schneider, and perform an evaluation of Petty's mental RFC on that basis. The ALJ's evaluation of the opinions of these two treating medical sources may alter her assessment as to the overall weight of the evidence. It is possible that these reports are consistent with and may provide support for the opinions of other clinicians (including neuropsychologist Dr. Cecil, who found Petty "markedly" limited in many areas) (R. at 746-49). For instance, the ALJ accepted Petty's unverified, perhaps boastful, statement of his high job evaluation at Wal-Mart as a basis for rejecting Dr. Cecil's opinion that Petty had marked limitations in ability to remember work-like procedures and

in understanding, remembering and carrying out very short and simple instructions. (R. at 20). The ALJ did not reconcile Petty's allegation of his job evaluation with the fact that he was discharged from his job at Wal-Mart within a matter of months. Petty's vocational rehabilitation coach indicated in 2004 that Petty had been unable to keep a job for an extended period of time. (R. at 666). The coach stated that Petty required a strong support system in place at any job. *Id.* This is consistent with the medical reports of his dependent personality disorder, as well as Petty's work history itself. The ALJ rejected the evidence of Petty's extreme dependence on his wife because Petty had reported at a recent examination that they were getting a divorce. (R. at 19). Whether or not they divorce does not discount the fact that Petty has displayed ample symptoms of dependent personality disorder.

In addition, the ALJ relied on the fact that Petty had held a number of simple jobs in rejecting Dr. Cecil's opinion that Petty had marked difficulty in completing a normal workday and workweek. (R. at 20). The ALJ, however, failed to consider whether such jobs constituted substantial gainful activity, and whether Petty could perform work on a regular and continuing basis. (R. at 15). *See* SSR 96-8p. The employment records reflect that in 2002, Petty earned a total of $3574.43; in 2003, $1020.11; and in 2004, $3607.07. (R. at 55-59). In 2002, Petty worked at eight different jobs, 2003 one job, and 2004 two jobs. *Id.* Although the record reflects Petty's desire and continued attempts to work, it also is undisputed that Petty has not sustained any long term employment.

The ALJ has failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal quotation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall re-evaluate Petty's mental impairments and RFC, considering all of the evidence of record, including the reports of Dr. Alessi and Dr. Schneider, and shall explain the basis of her findings in accordance with applicable regulations and rulings.

### III.  CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusions at step four and step five of the sequential analysis are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/18/2008

*[signature: Sarah Evans Barker]*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana